DOUGHERTY *v.* GREENE, et al.

Oct. 12, 1953

No. 38832 38 Adv. S. 5 67 So. 2d 297

*McClure & Fant,* Sardis, for appellant.

*Roberson, Luckett & Roberson,* Clarksdale, *H. F. Jones,* Belzoni, and *Cowles Horton,* Grenada, for appellees.

Arrington, J.

On July 6, 1921, Mrs. M. K. Semmes, who then owned certain lands in Panola County, Mississippi, executed a certain instrument to R. W. Greene, the granting clause of said instrument being as follows:

"That in consideration of one dollar ($1), paid by second party to first party, the receipt of which is hereby acknowledged, and in consideration of the covenants, agreements and stipulations hereinafter contained, to be performed and kept by the said party of the second part, said party of the first does hereby bargain, sell, transfer and convey to the said party of the second part, his heirs and assigns, all the mineable and merchantable clays, in, under and upon the following described tract of land situated in the county of Panola, State of Mississippi, towit:

"All that certain tract of land, known as the Mrs. M. K. Semmes' farm, and lands adjacent, the property of Mrs. M. K. Semmes, and being particularly One Hundred (100) acres in a rectangle off the North side of the N. $\frac{1}{2}$ of Section Twenty-One (21) Township Seven (7) and Range Nine (9) West, this is particularly intended to convey, whether correctly described herein or not, the hill land containing a white plastic, refractory clay, and partly opened and partly operated heretofore."

The obligations imposed on the party of the second part, his heirs and assigns, were that he would enter on said premises within six months from date and make search for said clays, and if found in sufficient quantities and of a character suitable in the opinion of the second party to justify mining the same, then said second party would pay first party, as royalty, the sum of twenty-five cents (25¢) per ton for each and every ton of clay mined and sold; that after the expiration of one year from date,

party of the second part would mine not less than 400 tons of clay from said premises in each year, or if he should fail to begin mining operations within the stipulated time or should fail to thereafter mine said clay in the stipulated amount each year, then he was to pay party of the first part a sum equal to the royalty on said 400 tons each year, provided, however, that any amount thus paid in excess of the royalty on clays actually mined would be applied in payment for that subsequently mined in excess of the minimum yearly amount stipulated; that if second party should discover that clay did not exist on the premises in sufficient quantities or of desired quality to justify the mining thereof, or if in his judgment, at any time the mining of said clay should be or become unprofitable or if for any reason or cause second party should, in his discretion, conclude to abandon said premises, he was given the right to do so by giving written notice thereof to the party of the first part, and, in which event, "this agreement and lease shall then cease and determine in 30 days after the giving of such notice, and both parties shall thereafter be released from all obligations hereunder; provided, however, that said party of the second part shall remain liable for all royalties due up to the time of such termination."

It was provided further that if second party should fail to pay any of the royalties at the time and in the manner provided, "then this lease and agreement to be void at option of the first party."

It is not disputed that R. W. Greene entered on said lands and began operations as provided in said instrument. Subsequently, Mrs. Semmes conveyed to her son, W. S. Semmes, by quitclaim deed the lands described in the foregoing conveyance. This deed contained no reservation or exception. Thereafter, W. S. Semmes conveyed the same lands to his daughter, Mrs. Kathleen Semmes Dougherty, appellant herein, excepting 5/6th of the oil and gas.

After the execution of the quitclaim deed to her son, Mrs. Semmes wrote Mr. Greene directing that the royalties be paid to her son. Mrs. Semmes died intestate in 1944, and Mr. Semmes died testate on October 27, 1951. The royalty payments were never paid to Mrs. Dougherty during the lifetime of her father but were paid to him. After his death, some question arose as to whether the rights of Greene had terminated under the instrument dated July 6, 1921, because of the fact that the royalty payments had not been paid to Mrs. Dougherty, and a new agreement was entered into by Mrs. Dougherty and Mr. Greene on September 30, 1951. The new lease was for a term of twenty-five years with right of renewal and providing that the royalties would be paid to Mr. Semmes during his lifetime. Mr. Semmes died a short time afterward and after his death, Mr. Greene filed bill of interpleader in the Chancery Court of Panola County and paid into the registry of the court the royalty payments from the clay which had accrued since the death of Mr. Semmes. All interested parties were made defendants and summoned.

The heirs of Mrs. Semmes and the devisees in a residuary legacy under the will of Mr. Semmes (who was an heir of Mrs. Semmes) answered and by their cross-bill contended that the clay was conveyed to Mr. Greene in fee; that the money due by Mr. Greene was not royalty but the "consideration" for the execution of the conveyance and claimed that as heirs of Mrs. Semmes (and devisees of an heir) they were entitled to the money, all of which had accrued since the death of W. S. Semmes.

Mrs. Dougherty, appellant here, also filed answer and cross-bill, and claimed the money by virtue of her deed as a rental or royalty from the land, her contention being that the instrument excuted by Mrs. Semmes was a lease and further, that Greene's rights under the first instrument were terminated when the lease dated September

30, 1951, was executed and the only rights that Mr. Greene had after September 30, 1951, were by virtue of said lease.

Mr. Greene answered both cross-bills. In his answer to the cross-bill filed by the heirs of Mrs. Semmes he stated that he was disinterested in who received the money, but in his answer to the cross-bill filed by Mrs. Dougherty, he denied that she had any interest in the clays at the time he entered into the lease agreement with her on September 30, 1951, and claimed that he had become the sole owner thereof by virtue of the instrument executed by Mrs. Semmes on July 6, 1921. The trial court dismissed the appellant's cross-bill and held that the instrument dated July 6, 1921, was a conveyance in fee of all the clay under the lands; that the heirs of Mrs. Semmes and the devisees in a residuary legacy under the will of Mr. Semmes were entitled to the proceeds from the clay, and cancelled the lease executed by Mrs. Dougherty to Greene on September 30, 1951. From this decision the appellant has appealed.

The obligations imposed on Mr. Greene under the terms of the instrument dated July 6, 1921, are not consistent with ownership in fee of the clay. He was under the duty to pay for a minimum amount annually, and if the amount stipulated was not paid, then the lease would be forfeited at the option of the first party. Greene had the right to terminate this lease at will by giving thirty (30) days notice. Distinction between a mineral lease and a conveyance in fee simple is set forth in Anderson v. Sun Oil Company, 207 Miss. 332, 42 So. 2d 234, citing Summers' Oil and Gas, Perm. Ed., Par. 132, page 314. The court below was in error in holding that this instrument was a conveyance in fee of the clay. The instrument is clearly a mineral lease. It is well settled that the interest conveyed by such a lease is a determinable fee. Stokely v. State, ex rel. Knox, Attorney General, et al., 149 Miss. 435, 115 So. 563; Lloyd's Estate, et al. v. Mullen Tractor & Equipment Co., 192 Miss. 62, 4 So. 2d 282; Koe-

nig v. Calcote, 199 Miss. 435, 25 So. 2d 763. The royalty payable under this lease was an interest in the land itself. Merrill Engineering Co. v. Capital National Bank of Jackson, et al., 192 Miss. 378, 5 So. 2d 666; Palmer, et al. v. Crews, 203 Miss. 806, 35 So. 2d 430.

 Mrs. Dougherty acquired by deed from her father, all right, title and interest in and to the royalties and reversionary interest in the clay, the land having been conveyed to her by W. S. Semmes without reservation or exception as to the clay and W. S. Semmes having acquired the land by quitclaim deed from his mother without any reservation or exception whatsoever. Smith County Oil Co., et al. v. Jefcoat, et ux., 203 Miss. 404, 33 So. 2d 629. When Mr. Greene entered into a new lease with her on September 30, 1951, he thereby surrendered all rights under the lease dated July 6, 1921, and his rights are now measured by the terms of the lease dated September 30, 1951. Therefore, the decree of the lower court is reversed and decree for the appellant will be entered here.

Reversed and decree here for appellant.

*Roberds, P. J.,* and *Lee, Ethridge,* and *Lotterhos, JJ.,* concur.