**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2004-CA-01614-SCT**

**CONSOLIDATED WITH**

**NO. 2003-CA-01605-SCT**

*THOMAS MAX NYGAARD*

**v.**

*GETTY OIL COMPANY, CHEVRON TEXACO CORPORATION f/k/a TEXACO U.S. AND J.R. POUNDS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/30/2004 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BEN F. GALLOWAY |
| ATTORNEYS FOR APPELLEE: | DAVID L. MARTINDALE |
| | FOREST M. DANTIN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 06/30/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. Nine years following notice of the claim, Thomas Max Nygaard, as trustee for the Daisy Keith Trust, filed this lawsuit to recover underpaid oil and gas royalties. The central question on appeal is whether accrued mineral royalties are an interest in personalty with a three-year statute of limitations or an interest in land with a ten-year statute of limitations. Finding that the trial court was correct in applying the three-year statute of limitations, we affirm.

**BACKGROUND FACTS AND PROCEEDINGS**

¶2. Nygaard alleges that, by an instrument dated September 27, 1972, the Daisy Keith Trust (of which he was trustee) obtained title to an overriding royalty interest in certain oil and gas wells in the Greens Creek Field in Marion County, Mississippi. Sometime in the early 1980s, Getty Oil Company began oil and gas production[1] from wells located in Marion County. Chevron Texaco Corporation[2] later became a successor in interest to Getty and, in March, 1992, Texaco conveyed its interests in the subject wells to J.R. Pounds., Inc.

¶3. On September 16, 1993, Nygaard received a letter from Texaco informing him that the production from two wells in Greens Creek Field had yielded royalties which were due to the Daisy Keith Trust and that the royalties had been held "in suspense"[3] by Getty. The letter also informed Nygaard that Texaco had sold its interest in the Greens Creek Field wells to Pounds. After providing documentation requested in the letter, Nygaard received a check for the amount Texaco claimed was due.

¶4. In July 1996, Nygaard contacted Texaco claiming additional royalties were due. The claim was supported by an "independent study." Texaco responded by sending Ronnie Martin and Daniel P. Loughry to meet with Nygaard and his agents in Dallas, Texas, on December 3, 1998. No agreement was reached.

---

[1]It appears that, as of the filing of the case sub judice, the two wells in Marion County currently in dispute were still producing oil and gas.

[2]The defendant, Chevron Texaco Corporation, was formerly Texaco U.S. All Texaco-related entities will be referred to herein as "Texaco."

[3]The royalties had been held "in suspense" because Getty Oil was missing a copy of the trust instrument evidencing Nygaard's authority to sign on behalf of the Trust.

¶5. On June 4, 2002, Nygaard, in his capacity as trustee, filed suit against Getty, Texaco, and Pounds for unpaid royalties on production from the Rogers 28-11 and Sipp 20-9 wells in Marion County. The suit alleged causes of action for fraud and deceit and conversion.

¶6. The defendants filed motions for summary judgment, asserting that the statute of limitations barred Nygaard's claims. On June 24, 2003, the trial court granted summary judgment to Getty and Texaco, and partial summary judgment to Pounds.[4]

¶7. The original appeal was dismissed because of matters which were then still pending in the trial court, and the parties did not request the trial court to certify the judgment as "final," in accordance with M.R.C.P. 54(b). *Nygaard v. Getty Oil Co.*, 877 So.2d 559, 560 (Miss. Ct. App. 2004).

¶8. On July 30, 2004, the trial court made final the summary judgment and partial summary judgment in accordance with Rule 54(b). Nygaard now appeals to this Court both the summary judgment and the partial summary judgment, alleging that the trial court applied an incorrect statute of limitations or, in the alternative, that the defendants' fraudulent concealment served to toll the running of the statute of limitations.

## ANALYSIS

¶9. When a trial court grants summary judgment, our review is de novo. *Leffler v. Sharp,* 891 So.2d 152, 156 (Miss. 2004). Further,

---

[4]Pounds was not completely dismissed from the lawsuit since the statute of limitations had not lapsed on the claim of underpaid royalties for the three years next preceding the filing of the suit.

[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made. A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). This Court does not try issues on a Rule 56 motion; it only determines whether there are issues to be tried. The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. "The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense .... the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact."

891 So. 2d at 156 (citation omitted)  We also review issues of law (such as the applicable statute of limitations) de novo. *Andrus v. Ellis,* 887 So.2d 175, 179 (Miss. 2004).

*Statute of limitations*

¶10.    For certain causes of action, the Legislature has set a specific time limitation for bringing suit.  For instance, a lawsuit claiming libel or slander must be brought within one year after the cause of action accrued.  Miss. Code Ann. § 15-1-35 (Rev. 2003).  Furthermore, "[t]he completion of the period of limitation prescribed to bar any action, shall defeat and extinguish the right as well as the remedy. . . ."  Miss. Code Ann. § 15-1-3 (Rev. 2003).  Causes of action for which no specific limitation period is prescribed are governed by Mississippi's general three-year statute of limitations, which reads:  "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."  Miss. Code Ann. § 15-1-49(1) (Rev. 2003).

¶11.    Mississippi has no specific statute of limitations for claims of unpaid royalties.  Thus, the defendants argue that the general three-year statute of limitations applies.  However, Nygaard says his claim for unpaid royalties equates to a claim for recovery of an interest in

4

land. If so, then Nygaard's claim would be governed by Miss. Code Ann. §§ 15-1-7 and/or 15-1-9 (Rev. 2003), both of which prescribe a ten-year limitation period.

¶12.     In *Merrill Engineering Co. v. Capital National Bank of Jackson,* 192 Miss. 378, 5 So.2d 666 (1942), this Court held that "it is well settled by the great weight of authority from other jurisdictions that *until brought to the surface and reduced to possession*, oil or gas constitute an interest in real estate and not personal property." *Id*. at 670 (citations omitted) (emphasis added).

¶13.     In *Palmer v. Crews*, 35 So.2d 430 (Miss. 1948), this Court stated that "the distinction is to be kept clearly in mind between the thing itself, that is to say, minerals in place, and the proceeds thereof." *Id*. at 435.

¶14.     In *Estate of Haynes v. Steele*, 699 So.2d 918 (Miss. 1997), this Court held that, "although the right to receive royalty payments *in the future* from *underlying* mineral deposits is considered an interest in land, royalty proceeds, once paid, are personal property and no longer considered an interest in land." *Id*. at 925 (emphasis added) (citing *Dougherty v. Greene*, 218 Miss. 250, 67 So.2d 297 (1953)).

¶15.     Nygaard says we should consider the application of Texas law in *Kelly Oil Co. v. Svetlik*, 975 S.W.2d 762 (Tex. Ct. App. 1998), which, according to Nygaard, held that "a royalty interest in an oil and gas lease is an interest in real property and is held to have the same attributes as the real property itself. *Id*. at 674, citing Texas Law (citations omitted)."[5]  *Kelly Oil*, however, involved a dispute over the validity of an assignment of an "overriding royalty

_____

[5]The quotation is from Nygaard's brief.

interest in oil and gas leases." The ***Kelly Oil*** court provided no discussion of whether a claim for unpaid royalties <u>after production</u> of the oil and gas would constitute an interest in realty or personalty. Indeed, we find Texas law on this point to be completely consistent with our holding today. In ***Phillips Petroleum Co. v. Adams,*** 513 F.2d 355, 363 (5th Cir. 1975), the United States Court of Appeals for the Fifth Circuit, applying Texas law, held that "accrued royalty interests are personal property . . . as is the right to payment for severed minerals." ***Id***. at 363 (citations omitted). In another Texas case, the Texas Court of Civil Appeals held that "[a] right to a future royalty payment is an interest in land. However, once minerals have been severed from the reservoir or strata wherein they were originally contained, such minerals, including royalties thereon, become personalty." ***Sabine Prod. Co. v. Frost Nat'l. Bank of San Antonio,*** 596 S.W.2d 271, 276 (Tex. Civ. App. 1980).

¶16. Nygaard cites no authority from any jurisdiction for the proposition that unpaid or accrued royalties for post-production oil or gas should be classified as an interest in land, rather than personalty. We find no merit in Nygaard's claim on this point.

¶17. Since accrued royalties are personal property and not an interest in land, Miss. Code Ann. §15-1-7 is inapplicable. There being no applicable specific statute of limitations for actions seeking recovery of accrued royalties, the general, three-year statute must be applied. Miss. Code Ann. § 15-1-49(1) required Nygaard to bring the action "within three (3) years next after the cause of such action accrued."

*Constructive trust*

6

¶18. Nygaard also claims that the defendants are holding the unpaid royalties in a "constructive trust," bringing into play Miss. Code Ann. § 15-1-39 (Rev. 2003), which provides in pertinent part:

> Bills for relief, in the case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after . . . .

¶19. Defendants respond to Nygaard's claim of a constructive trust by first pointing out that he did not raise the claim in his complaint and, therefore, should not be heard to raise it now. Indeed, prior to Nygaard's brief, we find no mention of a constructive trust in the record. We therefore shall not consider it as an issue on appeal.

¶20. The relationship between Nygaard and the defendants is governed by written contracts. There is no allegation or fact suggesting that any defendant assumed or agreed to a trust relationship. Nygaard relies on ***Allred v. Fairchild***, 785 So. 2d 1064 (Miss. 2001), in which this Court, upon finding that a confidential relationship existed between Allred and Fairchild, imposed a constructive trust. A careful review of the facts of ***Allred*** reveals that the business relationship between Allred and Fairchild was a partnership. In describing the relationship, this Court stated, "Allred generally would secure mineral or other interests, and Fairchild would finance the ventures." ***Id***. at 1067. The relationship between Nygaard and the defendants, by contrast, was not a "venture." Rather, it was purely contractual.

*Fraudulent Concealment*

¶21. Nygaard alleges that even if the general three-year statute of limitations applies, it was tolled by Miss. Code Ann. § 15-1-67 (Rev. 2003), which provides:

7

If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

¶22.    In 2000, this Court recognized that "[i]n order to establish fraudulent concealment, 'there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim.'" *Robinson v. Cobb*, 763 So.2d 883, 887 (Miss.2000) (*citing* *Reich v. Jesco, Inc.,* 526 So.2d 550, 552 (Miss. 1998)).    In other words, to toll a statute of limitations, a plaintiff must prove that (1) that the defendant "engaged in affirmative acts of concealment," and (2) despite investigating with due diligence, the plaintiff was unable to discover the claim.    *See also* *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 463 (C.A.5 (Miss.) 2003) and *Queen v. Am. Gen. Fin., Inc.*, 289 F. Supp. 2d 782, 785 (S.D. Miss. 2003).

¶23.    The undisputed facts of the case before us require that Nygaard's claim of fraudulent concealment must fail since his own actions indicate knowledge of a potential claim.    Nygaard admits receiving a letter dated September 16, 1993, informing him of royalties due the Trust from the oil and gas production from two wells owned by the Trust.    This letter was the first indication that the Trust was due any royalties from these wells.    In July 1996, Nygaard sent Texaco a study he had commissioned which indicated the proper amount of royalties he claimed was due the Trust.    In December 1998, Nygaard met with Texaco representatives to discuss the inadequacies of the royalties.

¶24.    It is certainly possible that, until September 1993, Getty Oil and Texaco engaged in fraudulent concealment.    However, even if they did, Texaco mailed Nygaard a letter and a check

8

for past-due royalties in 1993. Nygaard was thus put on notice that royalties had been withheld from the trust. He had a duty to investigate, and the statute began to run. Since no suit was filed by September, 1996, the statute of limitations ran, and Nygaard may not now bring the suit.

¶25.   M.R.C.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but *his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him.

M. R. C. P. 56(e) (emphasis added). In order to comply with this rule and succeed on a claim of fraudulent concealment against Pounds, Nygaard must allege with specificity that Pounds engaged in affirmative acts of concealment.

¶26.   Pounds's acquired his interest in the wells in 1992. In 1993, Nygaard learned that Pounds' predecessor in interest, Chevron Texaco, had not fully paid the royalties due the Trust from the subject wells. Nygaard filed this suit in 2002 and offered the following answer in discovery:

> RESPONSE:  Admitted, that Pounds was served with process on August 26, 2002 as stated. Plaintiff would admit that he had not made any prior demand on Pounds for additional payments, but Plaintiff has not had an opportunity to review necessary records which address the issues of whether proper royalties have been paid the Plaintiff.

¶27.   Nygaard alleged no specific affirmative act by Pounds to conceal the true amount of royalties owed the Trust. Thus, Nygaard's claim of fraudulent concealment against Pounds has

9

no merit, and we affirm the trial court's grant of summary judgment as to any allegations of underpayment of royalties by Pounds prior to June 4, 1999.

## CONCLUSION

¶28.    The trial court did not err in applying the general three-year statute of limitations to the case sub judice since accrued royalties for post-production oil and gas are an interest in personal property and not an interest in land.    After applying the three-year statute of limitations, the trial court granted summary judgment to Getty Oil and Chevron Texaco, since their interests in the subject wells were conveyed to Pounds more than three years prior to the filing of this lawsuit and granted partial summary judgment to Pounds for any claims arising before three years prior to the filing of the lawsuit.    Further, the claim of fraudulent concealment has no merit since Texaco informed Nygaard of accrued royalties that were owed the Trust and since Nygaard has failed to allege any affirmative act by Pounds to conceal the true amount of royalties owed the Trust.    We therefore affirm the trial court's grant of summary judgment to Getty and Texaco and the trial court's grant of partial summary judgment to Pounds.

¶29.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**